

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of, | ) | |
| | ) | No. 37485-8-III |
| LISA DANCI MCNEIL, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| ROBERT DOUGLAS MCNEIL, | ) | |
| | ) | |
| Appellant. | ) | |

STAAB, J. — Robert McNeil was held in contempt for failing to provide Lisa

McNeil with bank statements from a college fund and failing to account for withdrawals

from these accounts as required by the parties' divorce decree. After failing to purge the

contempt, the court entered judgment against Mr. McNeil in an amount equal to the

unaccounted for funds.

Mr. McNeil appeals, arguing that he supplied all of the documentation in his

possession. He also contends the sanction is punitive because all of the daughter's

college expenses were ultimately paid by him personally or through distributions from

the 529 account.

We affirm the trial court's ruling and remand to correct the judgment.

FACTS

Lisa and Robert McNeil's marriage was dissolved in April 2018. One of the assets of the marriage was a 529 college savings account held at T. Rowe Price Group, Inc. Pursuant to an earlier settlement agreement, the parties stipulated that as of June 6, 2017, the account had a balance of $11,055. As part of the final divorce decree, Robert McNeil was to supply Lisa McNeil with all statements from this account showing expenditures and deposits no later than May 1, 2018. The 529 funds were to be used to pay post-secondary expenses for one of their children, and neither party could make withdrawals without the consent of the other.

Shortly after entry of the final dissolution decree, the parties arranged to roll the 529 account at T. Rowe Price into a similar account with Numerica Credit Union. On April 30, 2018, Mr. McNeil deposited $6,538.11 into a 529 account with Numerica. Mr. McNeil did not provide Ms. McNeil with statements from the T. Rowe Price account.

Over the course of a year, Mr. McNeil withdrew funds from the Numerica account. He provided some documentation to Ms. McNeil, but the receipts did not add up to the withdrawals. In August 2019, Mr. McNeil closed the Numerica account, and the balance of $6.45 was mailed to Ms. McNeil.

In November 2019, Ms. McNeil filed a motion for contempt, arguing that Mr. McNeil had failed to provide statements for the 529 account and failed to account for funds withdrawn from the account. Mr. McNeil responded that he had provided all of the

statements from the 529 account. In support of his position, Mr. McNeil attached statements from the Numerica account, but not the T. Rowe Price account, as well as receipts and statements for college-related expenses.

At the hearing on the contempt motion, a commissioner found that Mr. McNeil had not intentionally violated the divorce decree and had been paying for the daughter's college expenses from the 529 account.

Ms. McNeil moved for revision, arguing that she had only received statements for the Numerica account, which had an opening balance of $6,538.11. Since the T. Rowe Price account had $11,055.00 at the time of the divorce decree, Mr. McNeil had not accounted for $4,516.89. Mr. McNeil responded, arguing in part that regardless of what amount was rolled over, he had paid more than $11,055.00 in tuition and expenses from the 529 account and his personal account. Lisa replied, arguing in part that the actual tuition receipts only totaled $6,439.86.

Judge Shea Brown granted the revision request in February 2020, finding that Robert had not followed the final divorce order because he failed to provide statements and failed to document expenditures and withdrawals from the T. Rowe Price 529 account. The court reasoned that

> [t]he nature of the materials provided by [Mr. McNeil] in response to the Motion for Contempt address whether monies were paid to Columbia Basin College . . . . However, such materials do not address the nature of the Petitioner's request for contempt . . . . [S]uch materials do not enlighten

[Ms. McNeil] as to the source of the monies paid for [the daughter's] education.

Clerk's Papers (CP) at 157.

The court found Mr. McNeil in contempt and also found that he had the present ability to comply with the divorce decree. The court gave Mr. McNeil 60 days to purge the contempt by providing all statements from the T. Rowe Price 529 account showing all expenditures and withdrawals. Mr. McNeil was also to provide a full accounting of the expenditures from both the T. Rowe Price and Numerica accounts. "If the information provided by the Respondent fails to properly account for the $11,055, as provided hereinabove, the Petitioner may seek a judgment from the Respondent for any monies (of the $11,055) not accounted for." CP at 158.

Five months later, in July 2020, the court revisited the contempt order. Mr. McNeil provided a one-page summary statement from the T. Rowe Price account, showing that in 2017, he withdrew $10,000.00 from the account. The statement did not provide any details about the withdrawal or withdrawals. The court found that Mr. McNeil had failed to produce all the T. Rowe Price statements and failed to account for all of the funds. The court entered a judgment in the amount of $5,060.14 and awarded Ms. McNeil her attorney fees.

Mr. McNeil appeals.

ANALYSIS

1. DID THE TRIAL COURT ERR IN FINDING THAT MR. MCNEIL INTENTIONALLY DISOBEYED THE DIVORCE DEGREE?

A trial court's decision to hold a litigant in contempt is reviewed for an abuse of discretion. *King v. Dep't of Soc. and Health Servs.*, 110 Wn.2d 793, 798, 756 P.2d 1303 (1988). A trial court abuses its discretion if it misapplies the law or relies on unsupported facts. *Gildon v. Simon Prop. Grp., Inc.*, 158 Wn.2d 483, 494, 145 P.3d 1196 (2006). A trial court's findings of fact are upheld if they are supported by substantial evidence. *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014). Substantial evidence is evidence sufficient to persuade a fair-minded person. *Id.*

In this case, the trial court did not abuse its discretion in finding Mr. McNeil in contempt. In June 2017, the parties had a 529 account at T. Rowe Price with a balance of $11,055. In April 2018, Mr. McNeil was ordered to provide all statements from the 529 account to Ms. McNeil by May 1, 2018. At the time of this order, the only 529 account in existence was the T. Rowe Price account. Mr. McNeil did not comply. Instead, almost two years later, and after being held in contempt, he provided the court with a one-page summary statement showing that sometime during 2017, he withdrew $10,000 from the T. Rowe Price 529 account. He did not provide documentation to show where that money went.

Mr. McNeil argues that he has provided the statements and receipts in his possession and cannot provide further documentation because it either does not exist or is not available to him. The law presumes that Mr. McNeil can comply with the court's order. *King*, 110 Wn.2d at 804. Inability to comply is an affirmative defense to a contempt order, and Mr. McNeil has the burden of production and the burden of persuasion. *Id*.

Mr. McNeil fails to carry his burden. He fails to demonstrate that he did not have access to bank statements for an account in his name. His late submission of a one-page summary statement for 2017 belies his argument. But even this statement was wholly inadequate as it did not provide details about withdrawals or deposits. There is no evidence that the statement provided is the only one generated by T. Rowe Price for 529 accounts. Nor did Mr. McNeil explain why he could not provide receipts for expenses that he claims to have paid.

Next, Mr. McNeil argues that the trial court's contempt judgment was punitive, not remedial because he paid all of his daughter's college expenses from either his personal account or the 529 account. He asserts that these college expenses totaled more than the balance of the 529 account. Mr. McNeil reasons that since Ms. McNeil has never paid for any college expenses, it is punitive to award her a judgment. We disagree.

6

The superior court may hold parties in contempt and issue remedial sanctions to enforce their lawful orders. RCW 7.21.020, .030. A sanction for civil contempt must be coercive and not punitive. *In re Marriage of Didier*, 134 Wn. App. 490, 501, 140 P.3d 607 (2006). The purpose of a civil contempt sanction is to coerce compliance with the court's earlier order. RCW 7.21.030.

Mr. McNeil was given 60 days to purge the contempt; thus, the sanction was intended to coerce his compliance. If he failed to do so, a judgment would be entered for the difference between the account balance and unexplained expenditures. At the subsequent hearing, Ms. McNeil disputed Mr. McNeil's figures and calculations and provided the trial court with receipts showing the college costs that Mr. McNeil actually paid. The trial court adopted Ms. McNeil's figures and found that Mr. McNeil had failed to account for $5,060.14 of the original $11,055.00 funds. There was evidence to support the trial court's findings. The judgment was remedial, intended to coerce Mr. McNeil to comply with the divorce decree and put the parties back in the same position had he not violated the order.

The only error we find is mathematical. On review of the contempt order, the trial court started with a figure of $11,500.00 instead of $11,055.00. Consequently, the court's final judgment is not supported by the evidence and must be reduced by $445.00 to $4,610.14.

7

No. 37485-8-III
*In re Marriage of McNeil*

Remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Pennell, C.J.